IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| D. BART ROCKETT, </br> as next friend of his minor children, </br> K.R. and B.R, </br></br> Plaintiffs, </br></br> vs. </br></br> THE HONORABLE ERIC EIGHMY, </br></br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) </br></br></br></br></br></br>Case No. 6:21-cv-03152-MDH |

**ORDER**

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 105). Defendant moves for summary judgment on Plaintiffs' three counts under U.S.C. Section 1983: Count I – Unreasonable Seizure; Count II – Retaliation for Exercise of their First Amendment Rights; and Count III – Due Process Violation. Defendant argues he is entitled to judicial immunity, qualified immunity, and that Plaintiffs fail to establish a prima facia showing of all three causes of action. Plaintiffs have filed an opposition, and the motion is ripe for review.

**BACKGROUND**

Bart and Kami Rockett, the parents of K.R. and B.R., were divorced on August 31, 2009 in the Circuit Court of Taney County, Missouri before Judge Justus. On July 25, 2018, Kami Rockett filed a modification petition in Taney County and the court appointed Kevin Easley as guardian ad litem for K.R.[1] and B.R. On October 8, 2019, the Honorable Eric D. Eighmy presided

---

[1] K.R. stands for Kadan Rockett. Initially, while a minor, Kadan Rockett proceeded in this litigation by his initials K.R., and was represented as a real party in interest by his father, Bart Rockett, as next friend. Now that Kadan is an adult, he has since been joined as an additional plaintiff in his own right.

1

over the modification proceeding. Kadan and B.R. were not physically present in the courtroom during the modification proceeding, however, the children were in the courthouse. Judge Eighmy had ordered the children to be there in a previous order. Dr. Cindy Baker, a court-ordered child counselor, was also present in the courthouse.

At the time of the modification proceeding, Kadan was 14 years old and B.R. was 12 years old. Bart Rockett lived in California and Kami Rockett lived in Utah. Prior to the modification hearing the children had not seen their mother for approximately one month because the children had remained in Hollywood "to focus on their entertainment careers."

At the modification hearing, Bart and Kami Rockett negotiated a settlement agreement in which Kami Rockett would have sole physical and legal custody of the children. Bart Rockett would continue to have the children with him at certain times specifically set out in the agreement. During the modification hearing it was also determined that Kami Rockett would be immediately taking sole custody of the children and going to Utah after the proceeding.

Neither Kadan nor B.R. had any input into the custody modification decision. They were not present in the courtroom. Judge Eighmy never sought or requested their input prior to issuing his ruling. The children requested that GAL Kevin Easley let them speak to Judge Eighmy. Judge Eighmy does not allow children in the courtroom during custody hearings. Kadan and B.R. wanted to let Judge Eighmy know that they did not want their mother to have full custody of them, they did not want to leave the courthouse with her, and they did not want her to have the ability to interfere with their acting careers in California.

Kevin Easley first told the children that an agreement had been reached and that they would be leaving to go stay with their mother. The children expressed their disagreement with this plan. Kadan and B.R. also met with their mother and Dr. Cindy Baker. It appears this meeting took place

2

on the first floor of the courthouse, where both children expressed their displeasure with having to leave with their mother that day. The children asked questions about how long and permanent the arrangement was, when they would next see their father, and if they could go to lunch with him that day.

When Dr. Baker spoke with Kadan and B.R. they seemed upset about the arrangement. The children expressed to Dr. Baker that they would not go with their mother and instead wanted to remain in the custody of their father. At some point Bart Rockett went outside to his vehicle to retrieve the children's cellphones. While outside, Bart Rockett was asked by a bailiff to leave. The parties dispute the specifics of Bart Rockett's being asked to leave the courthouse, whether he gave the bailiff his children's phones, and other details of his leaving the courthouse and the bailiff's involvement. However, it is undisputed that he was not in the courthouse when the alleged seizure of the children occurred.

Judge Eighmy states he received a phone call from a court officer stating that Kadan and B.R. wanted to speak with him and were refusing to go with their mom. Kadan and B.R. deny that they ever made such a request. Regardless, Judge Eighmy went downstairs and took Kadan and B.R. into a witness room on the first floor, accompanied by Dr. Baker. Judge Eighmy discussed with the children going home with their mother. The children indicated their refusal to go with their mother. The parties dispute the actual discussions and what the children did, or did not, say during these meetings. The parties further dispute what Judge Eighmy said to the children.

Plaintiffs allege Judge Eighmy told the children that if they did not agree to leave the courthouse with their mother, he could place them into the foster care system. Judge Eighmy denies this. Plaintiffs also allege Judge Eighmy told the children they should not be in the entertainment industry or acting. Judge Eighmy also denies this.

3

At some point, Judge Eighmy escorted Kadan and B.R. down to the juvenile office. Dr. Baker also went with them to the juvenile office waiting area. Once in the juvenile office, Judge Eighmy informed the Chief Juvenile Officer, Darlene Rea that the children were refusing to leave with their mother and that their father had been asked to leave the courthouse. Plaintiffs deny that Bart Rockett had been asked to leave the courthouse. Darlene Rea asked the children numerous times if they would go with their mom, but they refused. Plaintiffs further contend that Rea did not know why the children were in the juvenile office, and that she incorrectly assumed it was an abuse and neglect case. The details of what occurred at the time the children were escorted to the juvenile office, and everything occurring after, is highly contested by the parties.

Judge Eighmy states Rea took Kadan and B.R. back to a room which contained two "holding cells." Rea testified she would have done that for the children's privacy and safety. Kadan and B.R. each testified that Judge Eighmy and a male officer took them back to the room, and it was not Rea. Kadan and B.R. each further testified that it was Judge Eighmy who directed that the children be placed into the holding cells.

Rae contends she determined it would be best to separate the children and place them in the holding cells. Plaintiffs dispute that they were placed in cells for their safety, or because they would not cooperate with Rea. The children testified that it was because they stated that they did not want to leave with their mother and wanted to return to Hollywood to remain working in the entertainment industry. Plaintiffs allege Judge Eighmy "locked them up." They state the cell doors were closed and locked. Defendant denies this.

There are genuine issues of material fact regarding what happened in the juvenile office and holding cells. For example, the parties dispute who placed the children in the cell, who ordered them to be placed in the cell, the purpose of their placement in cells, whether they were searched,

4

whether the doors were locked, the length of time they were in the cells, and statements and discussions that occurred during that time.

## PROCEDURAL BACKGROUND

Defendant previously filed an interlocutory appeal of this Court's Order finding judicial immunity did not shield Judge Eighmy's actions. The Eighth Circuit affirmed in part and reversed in part this Court's Order. *Rockett as next friend of K.R. v. Eighmy*, 71 F.4th 665 (8th Cir. 2023). Specifically, the Eighth Circuit found judicial immunity did not apply to Judge Eighmy's actions taken in the Taney County courthouse "…when he personally escorted the kids to jail, stood there while they removed their clothes and belongings, and personally came back an hour later to release them." *Id.* The Eighth Circuit found that judicial immunity did apply to Judge Eighmy's actions with respect to the writ of bodily attachment executed in Louisiana. *Id.*

Defendant states the Eighth Circuit found that he was not acting in a judicial capacity for his actions in the Taney County Courthouse and that his actions were those of a jailer, rather than that of a judge. Citing *Id.* at 671-72. The 8th Circuit stated that Judge Eighmy could have ordered someone else to take the kids to jail as a judge, just not put them there himself. *Id.* at 672. The Eighth Circuit has found that judicial immunity does not apply.[2]

Defendant argues the theory of the case changed after the Eighth Circuit issued its opinion. Defendant contends that the Eighth Circuit's decision clearly set forth that while Judge Eighmy could not use judicial immunity for his actions, he may be entitled to qualified immunity as he could "order someone else" to take the kids to jail as a judge. This Court disagrees with that analysis. As stated by the Eighth Circuit, Judge Eighmy's decision to personally escort the kids to jail took what would otherwise be a judicial act too far. *Id.* Here, the children were never parties,

---

[2] Plaintiffs amended their complaint to drop any claims related to the Louisiana incident.

5

they never stepped foot in the courtroom, and if Plaintiffs' allegations are found to be true Judge Eighmy personally locked them up himself.

The parties dispute whether Defendant can now assert an affirmative defense of qualified immunity. Defendant argues that Plaintiffs filed an amended complaint after the case was remanded and as a result Defendant was free to amend its answer and add an affirmative defense of qualified immunity. Plaintiff argues Defendant waived his right to plead this affirmative defense and the defense should be stricken. The Court finds Defendant was free to amend his answer when it filed its response to the amended complaint. The court will not strike Defendant's affirmative defense.

## STANDARD OF REVIEW

Summary judgment may be granted by the Court only "if the movant show[ed] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). In ruling on a motion for summary judgment, all reasonable inferences must be drawn in a light most favorable to the non-moving party. *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). The moving party bears the burden of proving the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies that burden, the non-moving party avoids summary judgment by designating "specific facts" that demonstrate genuine, disputed issues for trial. *Id*. at 323-24. The Court must assess the evidence, and draw inferences therefrom, in the manner most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court cannot grant summary judgment if "there are any genuine factual

6

Case 6:21-cv-03152-MDH   Document 133   Filed 11/13/24   Page 6 of 12

issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250.

The party opposing summary judgment may not rest upon the mere allegations, but must produce significant probative evidence demonstrating a genuine issue for trial. *Anderson*, 477 U.S. at 248-49. Facts must be supported by admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), Fed. R. Civ. P. 56(c)(1); Rule 74.04 (c)(1).

## DISCUSSION

### A. Judicial Immunity

Defendant's motion for summary judgment argues Judge Eighmy is entitled to judicial immunity on all counts. Defendant states the question is whether his actions were within his judicial capacity when he escorted Kadan and B.R. to the Juvenile Office following the modification proceedings. Defendant argues the distinction that can be made from when this case was previously at the Eighth Circuit, is that the uncontroverted facts show the children were refusing to go home with their mother, their father had already left the courthouse, their mother sought assistance to bring the children under her control, and Judge Eighmy did not order the children to "remove their shoes, socks, jackets, and jewelry before entering separate cells" for "approximately an hour."

There are genuine issues of material fact that exist regarding what specifically occurred on the day of the incident. Defendant's arguments are all based on contested factual issues. Based on the record before the Court, a jury could determine that Judge Eighmy did in fact commit the actions alleged by Plaintiffs with regard to placing them in cells after the modification hearing. As a result, summary judgment on judicial immunity is denied.

### B. Qualified Immunity – Count I

Defendant argues he is entitled to qualified immunity because: 1) he did not seize the children and 2) if the seizure did occur it was reasonable.

A "seizure" occurs when the totality of the circumstances surrounding the incident indicates that "a reasonable person would have believed that he was not free to leave." *State v. Pesce*, 325 S.W.3d 565, 569 (Mo. Ct. App. 2010). The Fourth Amendment bars "unreasonable ... seizures." *Haynes v. Minnehan*, 14 F.4th 830, 835 (8th Cir. 2021) ("A seizure occurs 'if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'") (internal citation omitted). Whether or not the Fourth Amendment has been violated is a question of law. *State v. Garriott*, 151 S.W.3d 403, 408 (Mo. Ct. App. 2004) (internal citation omitted). However, the interpretation of the facts and circumstances related to the seizure is still "a matter of some discretion." *Id*.

The Court has reviewed the evidence submitted in the briefing, and there are genuine issues of material facts regarding what occurred in the juvenile office and holding cells. Plaintiffs present evidence, that if found to be true, would establish that the actions taken by Judge Eighmy constituted a seizure of the children. The circumstances surrounding the children's placement in the cells support that a reasonable person, especially a twelve or fourteen year old person, would not have believed they were free to leave. The specifics of what occurred present factual questions for a jury to determine. A jury could conclude that the children were in fact seized and placed in a position where they reasonably believed they were not free to leave by Judge Eighmy. As a result, summary judgment is not appropriate.

Further, if a jury finds in favor of Plaintiffs' description of what happened, then the Court could find a seizure occurred, and then whether the seizure was reasonable presents another issue.

8

The Court agrees with Plaintiffs that a reasonable juror could surmise that Judge Eighmy's intent was to punish the children, which would rise to the level of a substantive due process violation. Citing *Morris v. Zefferi*, 601 F.3d 805, 811 (8th Cir. 2010). Plaintiffs' claims that Defendant placed the children in a cell and threatened them with foster care to coerce them is a factual dispute for a jury to determine. Here, the children were not parties in a court proceeding, they were not in contempt, and there was no immediate child-welfare concern. However, even Plaintiffs' allegations are found to be true Judge Eighmy's actions, taken without any process of law, certainly could rise to the level of "shocks the conscience."

As a result, there are disputed facts that could meet the standard to prove that Judge Eighmy's behavior was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005) (en banc). The Court finds it is certainly possible that a jury could find that Judge Eighmy's actions were not reasonable and that is enough to survive summary judgment.[3]

---

[3] "Like these examples, Judge Eighmy's decision to personally escort the kids to jail took what would otherwise be a judicial act too far…. Judge Eighmy crossed the line, however, when he personally escorted the kids to jail, stood there while they removed their clothes and belongings, and personally came back an hour later to release them. For one thing, the children were not even present in the courtroom, so he could not hold them in contempt for '[d]isorderly, contemptuous or insolent behavior.' For another, judges do not do double duty as jailers. So even assuming Judge Eighmy could have ordered someone else to take the kids to jail, he could not put them there himself. It is no answer that Judge Eighmy believes he was exercising his contempt power. To be sure, absolute immunity is available for judges who hold a litigant in contempt even when they are "not in [their] . . . robes, . . . no[r] in the courtroom itself." But here, the children were never parties, they never stepped foot in the courtroom, and Judge Eighmy personally locked them up himself. We have been unable to find any case that extends judicial immunity so far. Judge Eighmy fares no better with his other argument: that Missouri law allows judges to enforce child-welfare statutes informally. Without question, police officers can take children into custody if they are behaving in a way 'injurious to [their] welfare or to the welfare of others.' But not judges, who can only order others to '[t]ake charge of children before and after' a juvenile hearing. The point is that judicial immunity is unavailable because what Judge Eighmy did is not 'a function normally performed by a judge.'" 71 F.4th at 671-72.

Further, this Court believes that any judge should know a seizure, if Plaintiffs' allegations are proven to be true, was not constitutionally authorized absent due process proceedings. Placing children in a cell without any court proceeding or other basis, again if Plaintiffs' evidence is believed, would establish a violation. Judge Eighmy argues that he was performing an executive function and is entitled qualified immunity. Defendant contends his actions fall within the category of executive actions to which state employees enjoy qualified immunity. Judge Eighmy states because he was specifically asked to be involved in determining what to do with the children, who were steadfastly refusing to go with their mother, that he escorted them to the Juvenile Office, and was clearly attempting to determine what options could be explored to ensure the safety and wellbeing of the children. This again is disputed. The testimony of the children, and others, are not consistent with Judge Eighmy's version of the events and creates a factual dispute.

Finally, Judge Eighmy argues "the protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Citing *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). Defendant contends that even if his actions were at worst taken in good faith to help resolve the issue presented in the bests interests of the children he is entitled to qualified immunity. He states he is protected "from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396. However, Judge Eighmy's argument that he was not acting with deliberate indifference, and his actions were taken with the children's best interests in mind is disputed. Clearly, based on the evidence presented by Plaintiffs, if a jury found Plaintiffs testimony to be true they could find Judge Eighmy was not acting in the bests interests of the children.

As the Court states throughout this Order, if a jury were to find Plaintiffs' evidence to be true Judge Eighmy's actions could be found to constitute deliberate indifference and shock the conscience.

### C. Qualified Immunity – Count II

To establish a prima facie case of a First Amendment Retaliation claim Plaintiffs must prove: 1) they engaged in a protected activity; 2) Judge Eighmy took adverse action against them that would chill a person of ordinary firmness from continuing in the activity, and 3) the adverse action was motivated at least in part by the exercise of protected activity. *Spencer v. Jackson County*, 738 F.3d 907, 911 (8th Cir. 2013). As previously stated, a factual dispute exists regarding Judge Eighmy's actions, the statements made, the actions taken, and the context of the incident.

Further, Plaintiffs have cited a recent authority regarding this claim. See *Murphy v. Schmitt*, 604 U.S. ___, No. 23-1228, 2024 WL 4426466 (U.S. Oct. 7, 2024). In *Murphy,* the Supreme Court granted certiorari, vacated the Eighth Circuit's opinion, No. 22-1726 (8th Cir. Sep. 6, 2023), and remanded to the Eighth Circuit for further consideration in light of *Gonzalez v. Trevino*, 602 U.S. 653, 144 S. Ct. 1663, 219 L. Ed. 2d 332 (2024).

As stated by Plaintiffs, both *Gonzalez* and *Murphy* concern a seizure where there was probable cause, but probable cause did not bar a retaliatory seizure claim where the plaintiff shows that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been. See *Gonzalez* 602 U.S. 653, citing *Nieves v. Bartlett*, 139 S.Ct. 1715, 1727 (2019) (as a general rule, a plaintiff bringing a retaliatory-arrest claim "must plead and prove the absence of probable cause for the arrest").

Here, Plaintiffs have alleged that no other child has been personally seized by the judge of their parents' custody case for being unwilling to go live with one parent. Plaintiffs further allege

Judge Eighmy made statements that showed the children's speech caused him personally to seize and jail the children. This creates a factual dispute for a jury to decide. For the reasons stated herein summary judgment on this claim is also denied.

### D. Qualified Immunity – Count III

Defendant argues that even if it is determined that a seizure occurred in this case the substantive due process claim fails because Plaintiffs cannot prove the actions "shock the conscience." Defendant states this analysis is conducted by the Court looking at the totality of the circumstances surrounding the situation. *Lund v. Hennepin County*, 427 F.3d 1123, 1125 (8th Cir. 2005). The Court has reviewed the record before it, and again as already stated, if Plaintiffs' allegations are found to be true the conduct and circumstances surrounding the seizure of the children certainly could shock the conscience. The children were minors, not parties to any court proceeding, threatened with adverse action, and put into holding cells for their refusal to leave the court with their mother.

## DECISION

For all the reasons set forth herein, the Court finds genuine issues of material facts exist and as a result **DENIES** Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

DATED: November 13, 2024

                                       */s/ Douglas Harpool*
                                       **DOUGLAS HARPOOL**
                                       **UNITED STATES DISTRICT JUDGE**